**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **ANTHONY WALKER,** | : | |
|     **Movant,** | : | |
| | : | |
|     **v.** | : | **Case No. 5:07-cr-00016-CAR-CHW** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **Proceedings Under 28 U.S.C. § 2255** |
|     **Respondent.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

**UNITED STATES' MOTION TO DISMISS MOVANT'S 28 U.S.C. § 2255 MOTION AND
RESPONSE TO MOVANT'S "MOTION TO STAY 28 U.S.C. § 2255 AND HOLD IN
ABEYANCE PENDING DECISION IN _BECKLES v. UNITED STATES_"**

COMES NOW the United States of America, by and through its attorney, the United States

Attorney for the Middle District of Georgia, and responds in opposition to Anthony Walker's

motion to stay 28 U.S.C. § 2255 and hold in abeyance pending decision in _Beckles v. United States_

and moves to dismiss Walker's pending 28 U.S.C. § 2255 motion without prejudice. For the

reasons set forth below, the United States respectfully requests that the Court deny Walker's

motion to stay and grant its motion to dismiss.

**Factual and Procedural Background**

On June 27, 2016, the Federal Defenders of the Middle District of Georgia, Inc., filed

virtually identical pro forma pleadings on behalf of 69 movants, including Walker, which was

styled as a "Motion to Correct Sentence under 28 U.S.C. § 2255 & Hold in Abeyance Pending

Decision in _Beckles_." In this motion, the Federal Defenders did not review the specific facts of

each movant's case but, instead, advised the Court that they were moving without completing an

individualized assessment of each movant for "deadline purposes." The Federal Defenders

requested that the Court hold all 69 movants' § 2255 proceedings in abeyance pending the Supreme

Court of the United States' eventual decision in *Beckles v. United States*.[1] The Federal Defenders also advised the Court that they would "withdraw or supplement this Motion for each individual movant" once they received the documentation necessary to complete their review process.

On July 27, 2016, the Court appointed the Federal Defenders to represent 100 movants and to assess whether each movant qualified for relief for his or her prospective career offender claim under 28 U.S.C. § 2255 in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and the Supreme Court's grant of certiorari in *Beckles v. United States*, 136 S. Ct. 2510 (June 27, 2016) (Mem). The Court directed the Federal Defenders to file briefs on or before August 15, 2016, in support of their request to stay these 100 movants' § 2255 proceedings and hold them in abeyance pending the Supreme Court's eventual decision in *Beckles*. The Court further ordered the United States to respond on or before September 30, 2016. On August 10, 2016, the Court entered a similar order concerning 4 additional movants, bringing the total number of movants to 104.

Since entering its order on July 27, 2016, the Court filed reports and recommendations to dismiss at least 3 of the 104 movants' pending § 2255 motions: (1) Baldomero Lopez, 7:04-cr-10, (2) Jasper Fulton, 3:13-cr-26, and (3) Cleveland Hankerson, 5:91-cr-10. The Federal Defenders also either moved to withdraw or failed to file supporting briefs in accordance with the Court's prior instructions in at least 9 additional cases: (1) James Bethea, 5:07-cr-85, (2) Jimmy Brown, 5:11-cr-21, (3) Bradford Ford, 4:14-cr-8, (4) Bradford Ford, 4:98-cr-32, (5) Leo McTear, Jr., 7:14-

---

[1] To date, the Supreme Court has not scheduled oral argument in *Beckles*, and pursuant to the Supreme Court's most recent order in the case, briefing will continue until October 28, 2016. SCOTUSblog, http://www.scotusblog.com/case-files/cases/beckles-v-united-states/ (last visited Sept. 26, 2016). Although not yet on an oral argument calendar, it is highly likely that the Supreme Court will require oral argument in *Beckles*. In view of this procedural posture, the Supreme Court may not decide *Beckles* until June 2017.

cr-1, (6) Henry Stubbs, 5:98-cr-71, (7) Decory Bailey, 1:13-cr-9, (8) Demetrius Lee, 6:04-cr-5, and (9) Edlenco Billups, 5:96-cr-23. Rather than undertaking any individualized assessments of each of the remaining movants' prospective career offender claims, on August 15, 2016, the Federal Defenders filed another batch of virtually identical pro forma motions to stay all of these movants' 28 U.S.C. § 2255 motions and hold their § 2255 proceedings in abeyance pending the Supreme Court's eventual decision in *Beckles*.

By contrast, as part of its ongoing individualized assessment of each movant's case, the United States has already identified and moved to dismiss approximately 60 of the 104 movants' pending § 2255 motions for myriad reasons, including, but not limited to: (1) movants who had been released from prison and were denied authorization to file a second or successive § 2255 motions; (2) movants who had been released from prison and filed second or successive § 2255 motions without obtaining the necessary authorization; (3) movants who filed second or successive § 2255 motions without obtaining the necessary authorization; (4) movants who have pending appeals; (5) movants who had been released from prison; (6) movants who not only had been released from prison but also had at least two prior felony convictions for controlled substance offenses and thus will remain career offenders irrespective of *Beckles*; and (7) movants who had at least two prior felony convictions for controlled substance offenses and thus will remain career offenders irrespective of *Beckles*. The United States now responds in opposition to the pro forma motions to stay 28 U.S.C. § 2255 and hold in abeyance filed by the Federal Defenders on behalf of the remaining movants and moves to dismiss these movants' pending 28 U.S.C. § 2255 motions without prejudice.

<center>**Legal Analysis**</center>

The Federal Defenders filed pro forma 28 U.S.C. § 2255 motions on behalf of numerous movants, claiming that in light of *Johnson* and *Beckles,* these movants might become entitled to collateral relief under § 2255 at some unspecified future date because they were previously sentenced as career offenders.[2] Despite having months to complete their individualized assessment of each movant's case, the Federal Defenders instead filed similarly pro forma motions to stay, arguing that the Court should exercise its "sound discretion" to stay all of these movants' 28 U.S.C. § 2255 motions and hold their § 2255 proceedings in abeyance pending the Supreme Court's eventual decision in *Beckles*. Because the Federal Defenders have not established that their pro forma filings are properly before the Court in the first instance, and because the Federal Defenders also have not established the need for such a lengthy and categorical stay in each movant's case, the Court should deny Walker's motion to stay and grant the United States' motion to dismiss.

## I.  The Movants' Pro Forma Filings Are Not Properly Before the Court.

As a threshold matter, the Federal Defenders have not established that their pro forma filings are even properly before the Court. Generally, a movant may file a § 2255 motion requesting that the district court vacate, set aside, or correct his sentence within one year of the date on which his conviction became final where (1) the sentence was imposed in violation of law or the Constitution; (2) the sentencing court was without jurisdiction; (3) the sentence imposed was beyond the statutory maximum; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Collateral relief, however, is limited in scope. *See Davis v. United States*, 417 U.S. 333, 346 (1974) (holding that not "every asserted error of law can be raised on a § 2255

---

[2] As the Federal Defenders concede, any challenge to the movants' career offender designations is currently barred by *United States v. Matchett*, 802 F.3d 1185, 1193-95 (11th Cir. 2015).

motion"). *See also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."). More specifically, "a district court lacks the authority to review the alleged error 'unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice[.]'" *Spencer*, 773 F.3d at 1138 (quoting *United States v. Addonizio,* 442 U.S. 178, 185 (1979)) (internal quotation marks and citation omitted).

Where, as here, the movant seeks collateral relief under § 2255 with the assistance of appointed counsel, the movant must do more than file a skeletal 28 U.S.C. § 2255 motion and an indiscriminate motion to stay. "A movant in a collateral attack upon a judgment has the burden to allege and prove facts which would entitle him to relief." *Coon v. United States*, 441 F.2d 279, 280 (5th Cir. 1971).[3] *See also LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014) ("[O]n a § 2255 [motion, the burden of proof] belongs to the [movant]."). Nowhere in their pro forma filings do the Federal Defenders include specific, individualized facts to support each movant's prospective career offender claim. In fact, the Federal Defenders' pro forma filings provide considerably less information than the Court's standard form requires of pro se movants seeking collateral relief under § 2255, contrary to Rule 2(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts, which provides in pertinent part that "[t]he motion must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule."

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The Federal Defenders' pro forma filings also fail to allege, let alone prove, sufficient facts to establish that each movant's allegedly erroneous career offender designation constitutes a fundamental defect inherently resulting in a complete miscarriage of justice. Nor could they make this difficult showing on each movant's behalf in light of the United States Court of Appeals for the Eleventh Circuit's en banc decision in *Spencer*. The Eleventh Circuit in *Spencer* expressly rejected the movant's efforts to obtain collateral relief under § 2255 based on his allegedly erroneous career offender designation because "erroneously designating a defendant as a career offender—is not a fundamental defect that inherently results in a complete miscarriage of justice." *Spencer*, 773 F.3d at 1138. In so holding, the Eleventh Circuit explained that "[w]hen a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice." *Spencer*, 773 F.3d at 1139. *See also Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (explaining that collateral relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice") (internal quotations marks omitted).

Additionally, the Federal Defenders' pro forma filings fail to explain how the Supreme Court's grant of certiorari in *Beckles* places the remaining movants' prospective career offender claims within the limited purview of § 2255. It is well-established that "'grants of certiorari do not themselves change the law,' and 'must not be used by courts' as a basis to grant relief that would otherwise be denied." *In re Bradford*, No. 16-14512-J, 2016 WL 4010437, at *2 (11th Cir. July 27, 2016) (quoting *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1298–99, 1302 (11th Cir.

2007)). And it is undisputed that the Eleventh Circuit's decision in *Matchett* expressly forecloses the movants' ability to challenge their career offender designations. *See Matchett*, 802 F.3d at 1193-95. If the Supreme Court's grant of certiorari in *Beckles* does not change the existing law, and the existing law in the Eleventh Circuit bars the movants from obtaining collateral relief under § 2255, the Court should reject the Federal Defenders' reliance on the grant of certiorari in *Beckles* as a basis to grant the remaining movants' relief that they would otherwise be denied under *Matchett*. *Matchett* remains controlling case law in the Eleventh Circuit until it is abrogated by the Supreme Court in *Beckles* or some other future decision. While not binding on the Court, the United States notes that at least one other district court in Georgia recently dismissed the movant's § 2255 motion under *Matchett* and denied the movant's related motion to stay and hold his case in abeyance pending the Supreme Court's eventual decision in *Beckles*. *See e.g.*, *Beasely v. United States*, No. CR 308-001, 2016 WL 4535373, at *1 (S.D. Ga. Aug. 30, 2016).

## II. The Movants Fail To Meet Their Burden In Seeking A Stay.

Even if the Court assumes for the sake of argument that the pro forma filings of the Federal Defenders are properly before the Court, the Federal Defenders have not established the need for such a lengthy and categorical stay in each movant's case. According to the Federal Defenders, the Court should stay the movants' 28 U.S.C. § 2255 motions and hold their § 2255 proceedings in abeyance pending *Beckles*, pursuant to both the Court's discretion to stay proceedings as part of its power to control its own docket and the All Writs Act. The Federal Defenders also claim that movants might be prejudiced by the dismissal of their § 2255 motions and that holding these proceedings in abeyance promotes judicial economy. Contrary to the Federal Defenders' arguments, the Court lacks the authority to grant an undifferentiated stay of the movants' 28 U.S.C. § 2255 motions.

The first case cited by the Federal Defenders in support of their request to stay is the Supreme Court's decision in *Clinton v. Jones*, 520 U.S. 681 (1997), which arose from Paula Jones' efforts to pursue a civil suit against President Clinton based upon actions that allegedly occurred before his presidency. The Federal Defenders summarily quote one sentence from the Supreme Court's decision, which states "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Jones,* 520 U.S. at 706. Although the United States agrees that the Court retains broad discretion to manage its own docket, the United States suggests that reviewing the Supreme Court's complete decision in *Jones*, rather than an isolated snippet from it, undermines the Federal Defenders' reliance on this case.

The primary issue before the Supreme Court in *Jones* was whether either the Constitution or respect for the Office of the President required the district court to stay the trial until the end of Clinton's presidential term. *See Jones*, 520 U.S. at 684. After acknowledging the district court's discretion to stay proceedings as part of its power to manage its own docket, the Supreme Court held that the district court abused its discretion by deferring trial until after the President leaves office, reasoning that "[s]uch a lengthy and categorical stay takes no account whatever of the respondent's interest in bringing the case to trial." *Id*. at 707. The Supreme Court also concluded that the district court's decision to stay the trial was "premature" because "[t]he proponent of a stay bears the burden of establishing its need," and because there was no way to assess whether a stay would be warranted in *Jones* given the early stage at which the district court made its ruling. *Id*. at 708. The Supreme Court's concerns in *Jones* about prematurely granting lengthy and categorical stays without first requiring the proponents of the stay to satisfy their burden of establishing the need for the stay are equally instructive to the Court here.

Reviewing the Supreme Court's complete decision in *Nken v. Holder*, 556 U.S. 418 (2009), which is the second case cited by the Federal Defenders in support of their request to stay, also undermines the Federal Defenders' request to stay. In *Nken*, the Supreme Court explained that the traditional standard for a stay requires a reviewing court to consider four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken*, 556 U.S. at 425-26 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). The Supreme Court underscored that "'[a] stay is not a matter of right, even if irreparable injury might otherwise result.'" *Nken*, 556 U.S. at 433 (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)). "It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" *Nken*, 556 U.S. at 433 (quoting *Virginian R. Co.*, 272 U.S. at 672-73). Additionally, the Supreme Court underscored that "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

Despite their reliance on the Supreme Court's decision in *Nken*, the Federal Defenders never acknowledge, let alone address, the four traditional stay factors. Even if the Federal Defenders had acknowledged the four traditional stay factors, the nature of their pro forma filings foreclose any argument that the Federal Defenders performed the individualized assessments necessary to satisfy their burden of showing that the particular circumstances of each of the remaining movants' § 2255 proceedings should be stayed, pursuant to the Court's exercise of its judicial discretion. Further, there is no basis to conclude that the Federal Defenders could satisfy the first two factors—strong showing of likelihood of success on the merits and irreparable injury

absent a stay—as to any of the movants. "The first two factors of the traditional standard are the most critical[,]" and "simply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (internal citation omitted). Because the Federal Defenders cannot satisfy the first two factors, the Court need not consider the second two factors—assessing the harm to the opposing party and weighing the public interest—which merge in cases where the United States is the opposing party. *Id*. at 435.

The Federal Defenders' reliance on the All Writs Act is similarly misplaced. The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999) (quoting 28 U.S.C. § 1651(a)). By its express terms, the All Writs Act limits the court's power to issue extraordinary writs "in aid of" its existing statutory jurisdiction. *Goldsmith*, 526 U.S. at 534-35 (quoting 28 U.S.C. § 1651(a)). "[T]he [All Writs] Act does not enlarge that jurisdiction." *Id*.

Further, resort to the All Writs Act is "out of bounds" and "unjustifiable" where alternative remedies are available to the party invoking it. *Goldsmith*, 526 U.S. at 537. "[T]he All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Id*. Here, the Federal Defenders' pro forma filings are predicated upon an alternative avenue of statutory relief—28 U.S.C. § 2255. That alternative avenue of statutory relief remains available to the movants even if the Court declines to stay their § 2255 proceedings and dismisses their pending § 2255 motions without prejudice. More specifically, a movant can file an individualized § 2255 motion, in accordance with the appropriate

legal standards, if and when his prospective career offender claim becomes ripe. Thus, the All Writs Act does not bolster the Federal Defenders' request to stay.

The Federal Defenders' equitable arguments to stay are unavailing as well. Insofar as the Federal Defenders claim that movants might be prejudiced by the dismissal of their § 2255 motions, they are mistaken. As the Eleventh Circuit cogently explained in a case involving a movant seeking permission to file a second or successive § 2255 motion based on the Supreme Court's grant of certiorari in *Beckles*, "[i]f the Supreme Court decides in *Beckles*, or some other decision, that the residual clause of § 4B1.2(a)(2) of the career offender provisions of the guidelines is unconstitutional, [the movant] will have a new claim under § 2255(h)(2) for which he can then file an application to file a second or successive § 2255 motion. It will not be a *Johnson/Welch* claim, but a *Beckles* claim." *In re Bradford*, ___ F.3d ___, No. 16-14512-J, 2016 WL 4010437, at *6 (11th Cir. July 27, 2016) (emphasis in original). This is no less true in cases involving movants seeking to file their first § 2255 motions to bring a *Beckles* claim if the Supreme Court eventually decides *Beckles* in a manner that entitles them to collateral relief. The dismissal of these § 2255 motions without prejudice will not harm the movants. Rather, it will return them to the correct procedural posture should they become entitled to collateral relief at some later date.

Additionally, issuing a lengthy and categorical stay and holding the remaining movants' § 2255 proceedings in abeyance pending the Supreme Court's position in *Beckles* does not promote judicial economy. Even though the Federal Defenders apparently have not done so, both the Court and the United States have undertaken the arduous process of individually assessing each movant's prospective career offender claim, thereby identifying large numbers of movants who are not entitled to relief for myriad reasons. Nothing is lost in dismissing the movants' underdeveloped and premature filings now. To the contrary, granting the United States' motion to

dismiss will promote judicial economy because it will remove a tsunami of pro forma filings from the Court's docket and will return these cases in a procedural posture to be properly refiled in the future, if it becomes appropriate to do so, in accordance with well-settled legal standards.

## Conclusion

Therefore, the United States requests that the Court deny Walker's motion to stay and grant its motion to dismiss.

Respectfully submitted, this 29th day of September, 2016.

G.F. Peterman, III
United States Attorney

By: s/ Lindsay B. Feinberg
Assistant United States Attorney
Georgia Bar No. 869169

United States Attorney's Office
Middle District of Georgia
Post Office Box 1702
Macon, Georgia 31202-1702
(478) 752-3511

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2016, I electronically filed the within and foregoing UNITED STATES' MOTION TO DISMISS MOVANT'S 28 U.S.C. § 2255 MOTION AND RESPONSE TO MOVANT'S "MOTION TO STAY 28 U.S.C. § 2255 AND HOLD IN ABEYANCE PENDING DECISION IN *BECKLES v. UNITED STATES*" with the Clerk of the Court using the CM/ECF system which will send notification to all parties of record.

<div style="margin-left:50%">

G.F. Peterman, III
United States Attorney

By: s/ Lindsay B. Feinberg
Assistant United States Attorney
Georgia Bar No. 869169

</div>

United States Attorney's Office
Middle District of Georgia
Post Office Box 1702
Macon, Georgia 31202-1702
(478) 752-3511